899-9

**DeORCHIS, WIENER & PARTNERS, LLP**
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

Attorneys for Plaintiff
PAKRI TANKERS OU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PAKRI TANKERS OU

                            Plaintiff,                07 Civ.   (   )

       v.

BALTIC HYDROCARBONS LIMITED, BALTIC      **VERIFIED COMPLAINT**
PETROLEUM LTD. and BALTIC OIL                    **AND RULE B ATTACHMENT**
TERMINAL PLC,

                            Defendants.
-----------------------------------------------------------X



      Plaintiff Pakri Tankers OU (hereinafter referred to as "Pakri"), by its attorneys, DeOrchis Wiener & Partners, LLP, as and for its Verified Complaint against Defendants Baltic Hydrocarbons Limited (hereinafter "BH"), Baltic Petroleum Ltd. (hereinafter "BP") and Baltic Oil Terminal PLC (hereinafter "BOT"), alleges upon information and belief, as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

      2.     Venue is proper under 28 U.S.C. §§ 1391 (d) because Defendants BH, BP and BOT are aliens.

3. At and during all times hereinafter mentioned, Plaintiff Pakri was, and still is, a corporation organized and existing under and by virtue of the laws of the Republic of Estonia with a place of business at Toom Ruutli 12-10, Tallinn, Estonia at all times hereinafter mentioned, was engaged in the business of chartering and operating vessels for the carriage of goods by sea.

4. Defendant BH is a corporation or other business entity incorporated under the laws of England or some other foreign country, with official registered number 5606176 with an office and place of business located 6-8 Underwood Street, London, England, whose 100 shares of stock are owned by BP, upon information and belief, and at all times hereinafter mentioned was engaged in the business of chartering vessels and trading oil and hydrocarbon products.

5. BP is a corporation or other business entity incorporated on 3 December 2004 under the laws of England, or some other foreign country with official registered number 5303991 whose registered office is at 6-8 Underwood Street, London, UK and is wholly-owned by BOT, upon information and belief.

6. BOT is a corporation organized and existing under and by virtue of the laws of the England, incorporated on 22 March 2006 with official registered number 5303991 and with an office at 83 Baker Street and registered office at 6 – 8 Underwood Street, London, UK, and is engaged in business as a crude oil and hydrocarbon infrastructure and terminal operator.

## AS FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT BALTIC HYDROCARBONS LIMITED

7. Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth at length.

8. Plaintiff Pakri as time chartered owner and Defendant BH as time charterer entered into a time-charter on or about July 24, 2007, by which BH employed Plaintiff's time chartered vessel M/T FRYKEN and subsequently M/T VISTEN for a period of six months (+/- 15 days in BH's option) for the carriage of lawful petroleum and petroleum products in exchange for certain charter-hire payments in the amount of US$9,350 per day payable 30 days in advance and payment of other operating expenses and commissions as prescribed by the various provisions of the agreement.

9. The M/V FRYKEN was delivered to BH on or about August 1, 2007 whereupon charter hire, bunkers, port costs, 2.5% commercial commission on freight, dead freight, demurrage and other items specified in the charter agreement were for the account of BH.

10. On or about October 5, 2007 Plaintiff substituted the vessel M/T VISTEN for M/T FRYKEN by mutual agreement with defendant BH with all other terms and conditions remaining the same.

11. On or about November 3, 2007, defendant BH prematurely redelivered the vessel to Plaintiff in violation and breach of its agreement and promise to employ the vessel and pay charter hire, etc. up to at least January 14, 2008.

12. At the time of the breach, there was due and owing to Plaintiff by Defendant BH the sum of $99,033.33 as unpaid and/or unreimbursed costs, expenses, commissions and

3

charter hire detailed in Statement of Account attached hereto as Exhibit A, which BH has failed to pay although duly demanded.

13. Pursuant to the agreement between Plaintiff and BH, all disputes are subject to English law and BH has the option to demand arbitration of this dispute up to December 6, 2007.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR BREACH OF CONTRACT AGAINST DEFENDANTS

14. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 11 as fully incorporated herein.

15. At the time of the fixture on July 24, 2007, with full knowledge, consent and approval of Defendant BH, Plaintiff time chartered the M/T FRYKEN or suitable substitute from the vessel owners, Ahlmarco BV of Hilversum, the Netherlands, on terms and conditions essentially and substantially back-to-back with the Pakri to BH agreement save that the charter hire rate was $9,250 per day and no commissions were payable.

16. As a result of the premature redelivery of the vessel by Baltic Hydrocarbon, plaintiff was forced in the premises either to unilaterally cancel its agreement with Ahlmarco and prematurely redeliver the vessel back to Ahlmarco, or trade the vessel for its own account and incur losses in so doing.

17. In order to avoid unnecessary litigation with Ahlmarco owing to the breach of the head charter with Ahlmarco by Plaintiff and in order to minimize the money damages and/or trading losses which Plaintiff would have otherwise sustained, Plaintiff entered into an agreement whereby it paid $75,000 to Ahlmarco in full and final settlement of all claims by

Ahlmarco arising out of the premature redelivery of vessel to Ahlmarco and other possible breaches of the charter agreement.

18. In addition to the payment of $75,000 referred to in paragraph 16 above, Plaintiff agreed to hold Ahlmarco harmless against and itself discharge all disbursements incurred on the vessel's account during the currency of the charter including bunkers, port costs and agents expenses, in addition to those included in the sum of US$93,033.33 referred to in paragraph 11 above. Such disbursements would, absent BH's wrongful premature termination of the charter, have been for BH's account.

19. Plaintiff estimates that it's liability under the hold harmless and disbursements discharge agreement with Ahlmarco amounts to $25,000.

20. The terms and conditions of the settlement agreement were fair and reasonable and conformed to the custom and practice or resolving similar charter disputes between vessel owners and time charterers in London and Europe.

21. By reason of BH's breach of the July 24 agreement with Pakri, Pakri has suffered the following further losses in the total sum of $31,250, namely

 a. The margin between the rate paid to Ahlmarco ($9,250 per day) and the rate received from BH ($9,350 per day) for a period of 75 days equivalent to $7,500.

 b. A management fee payable by BH to Pakri in the amount of $1,500 per month for a period of 75 days equivalent to $3,750.

c. Loss of 2.5% commercial commission on freight, dead freight, demurrage which Pakri estimates on the basis of previous earnings would have been equivalent to $20,000 for the balance of the charterparty period

22. By reason of BH's breach of the July 24 agreement with Pakri, BH is liable to Plaintiff for the sum of US$75,000 set out in paragraph 17 which Plaintiff was required to pay to Ahlmarco, and for the sums of $25,000 set out in paragraph 18 and $31,250 set out in paragraph 20 as a direct and proximate result of BH's wrongful conduct.

23. Plaintiff has demanded that Defendant BH pay the amounts of US$75,000, $25,000 and $31,250 but Defendant has failed to do so all in breach of its contractual obligations.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST BALTIC PETROLEUM LTD. and BALTIC OIL TERMINAL PLC AS ALTER EGO

24. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 22 as fully incorporated herein.

25. At all material times Defendant BOT and BP as dominant corporate parents used Defendant BH, *inter alia,* to implement the BOT and BP corporate objective of establishing an oil and hydrocarbon distribution business at Kaliningrad.

26. BH serves no other business purpose than to effectuate the objectives of BP and BOT. Indeed, the employment of the vessels by BH was at all material times subject to authorization by BP.

27. BP and BOT so control and dominate the existence of BH that BH was and is at all material times undercapitalized (believed to be £100), without cash flow unrelated to the

business of BP and BOT, sharing officers and directors, sharing commercial space, not dealing at arm's length, and the beneficiary of BOT paying directly out of its own accounts funds intended to satisfy contract obligations of BH, e.g. a payment of US$280,500 made on July 31, 2007 by BOT on behalf of BH to Plaintiff. According to public filings with Companies House in England, BH has not lodged any accounts for public inspection. According to Land Registry searches in England it has no property interest in its registered office address at 6-8 Underwood Street, London. It is not registered at that address for mail purposes. By reason of the foregoing, both Baltic Petroleum Ltd. and Baltic Oil Terminal PLC were and are the alter egos of Baltic Hydrocarbons and are answerable and obligated to pay the contractual debts and obligations of Baltic Hydrocarbons Ltd.

## APPLICATION FOR ISSUANCE OF A RULE B ATTACHMENT

28. Plaintiff repeats and re-alleges each and every one of the foregoing allegations as though fully set forth at length.

29. After due investigation, the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets, comprising *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants, or either of them ("assets"), including but not limited to assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, within this District and subject

7

to the jurisdiction of this Court including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank, and/or Standard Chartered Bank, which are believed to be due and owing to the Defendants.

30. The Plaintiff seeks an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of each of the Defendants held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants and to secure and/or satisfy the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing each to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That, since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property in whatever form, including but not limited to cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants, or either of them ("assets"), including but not limited to assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who

may be served with a copy of the Process of Attachment issued herein, including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank, and/or Standard Chartered Bank, which are believed to be due and owing to Defendant Baltics Hydrocarbons Limited, Baltic Petroleum Ltd. and Baltic Oil Terminals PLC in the amount of US$230,283.33 to satisfy and/or secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

    C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

    D.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
November 27, 2007

DeORCHIS WIENER & PARTNERS, LLP
Attorneys for Plaintiff
PAKRI TANKERS OU

By: _____
CHRISTOPHER H. MANSUY (CM-0813)
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700
Our File: 904-2

## PAKRI TANKERS/BALTIC HYDROCARBONS

## STATEMENT OF ACCOUNT

| ITEM | DEBIT | CREDIT |
|---|---|---|
| **FRYKEN** | | |
| TC 02.08-01.09 | $280,500.00 | $280,500.00 |
| COMMISSION | $2,000.00 | $2,000.00 |
| COMMISSION | $1,750.00 | $1,750.00 |
| TC 01.09-01.10 + BUNK | $322,720.15 | $322,720.15 |
| COMMISSION | $3,737.50 | $3,737.50 |
| OP.FEE | $1,450.00 | $1,450.00 |
| COMMISSION | $2,750.00 | $2,750.00 |
| COMMISSION | $2,375.00 | |
| OP.FEE | $1,500.00 | |
| COMMISSION | $2,375.00 | |
| TC HIRE 01.10-05.10 | $32,952.21 | $32,952.21 |
| BUNKERS ON RE-DELIVERY | | $60,197.50 |
| **VISTEN** | | |
| PORTS D/AS | $30,000.00 | $30,000.00 |
| BUNKERS | $60,949.80 | |
| COMMISSION | $2,000.00 | |
| COMMISSION | $2,375.00 | |
| COMMISSION | $2,375.00 | |
| TC 05.10-31.10 | $252,450.00 | |
| OP.FEE | $1,500.00 | |
| | | |
| OUTSTANDING PORT DUES AND BUNKERS | $257,224.78 | |
| | | |
| ADDRESS COMMISSION AS RECAP | $34,106.25 | |
| | | |
| **SUBFREIGHTS RECEIVED** | | |
| GREENENERGY | | $95,000.00 |
| GREENENERGY | | $95,000.00 |
| O.W | | $80,000.00 |
| O.W | | $190,000.00 |
| | $1,297,090.69 | $1,198,057.36 |
| | | |
| **OPERATIONAL BALANCE DUE** | | **$99,033.33** |
| | | |
| **HEAD CHARTER CANCELLATION FEE AND SUFFERED LOSES** | $131,250.00 | |
| | | |
| **TOTAL CLAIM** | | **$230,283.33** |

## VERIFICATION

I, DIMITRIJS SAVINS, declare and state that I am the managing director of Pakri Tankers OU located at Toom Ruutli 12-10 Tallinn, Estonia, plaintiff in this action and I have reviewed the foregoing Verified Complaint. I know of my own knowledge that the allegations are true, except as to matters stated on information and belief and as to those matters, I believe them to be true. The basis of my knowledge is personal familiarity with the charterparty formation and the performance of it by plaintiff and defendant. The reason that this Verification is not made by the plaintiff itself is that the plaintiff is a corporation.

I declare that the foregoing statements made by me are true and correct under penalty of perjury of the laws of the United States of America.

Executed:   Tallinn, Estonia
            November 27, 2007

_____
DIMITRIJS SAVINS